IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KARNELL NELSON, #N91564, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 20-cv-27-RJD |
| | ) |
| JEFF DENNISON, LU WALKER, and | ) |
| TERRY GRISSOM, | ) |
| | ) |
| Defendants. | ) |

### ORDER

**DALY, Magistrate Judge:**

This matter comes before the Court on Defendants' Motion for Summary Judgment (Doc. 35). Plaintiff did not respond. As explained further, Defendants' Motion is GRANTED.

### Introduction

Plaintiff, formerly incarcerated within the Illinois Department of Corrections ("IDOC"), filed this lawsuit *pro se* pursuant to 42 U.S.C.§1983, alleging that his constitutional rights were violated at Shawnee Correctional Center ("Shawnee"). Plaintiff alleged that at all relevant times, Defendant Dennison was the Warden at Shawnee, Defendant Grissom was the Assistant Warden of Operations, and Defendant Walker was the Assistant Warden of Programs (*Id*. p. 1, 2). Plaintiff further alleged that in the winter, the windows in his unit were "screwed shut" per order by Defendant Dennison and Defendants Grissom and Walker "turn[ed] a blind eye to this act of cruel punishment" (*Id*. p. 3). The ventilation system was "never cleaned or ran" and the dirt and debris interfered with Plaintiff's ability to sleep and breathe (*Id*.). Paint was peeling from the walls in his cell and Plaintiff would wake up to find the paint "in my hair, mouth, and my food." (*Id*.) The Court conducted a threshold review of the Complaint pursuant to 28 U.S.C. §1915A and found that Plaintiff adequately stated a claim against Defendants Dennison, Walker, and

Grissom for subjecting him to dangerous and unsanitary cell conditions and contaminated food in violation of the Eighth Amendment (Doc. 13).

In January 2021, Plaintiff was released from the IDOC and he provided the Court and Defendants with his new address (Doc. 33). Defendants filed their Motion for Summary Judgment on February 2, 2022 (Doc. 35). Because Plaintiff is *pro se*, they filed a Notice along with their Motion that explained to Plaintiff the potential consequences of failing to respond to a Motion for Summary Judgment, namely, that the Court may grant summary judgment if the motion and supporting materials show there is no genuine dispute of material fact (Doc. 37).[1] The Court had previously warned Plaintiff that his failure to respond to Defendants' Motion for Summary Judgment may result in the Court granting summary judgment in favor of Defendants, and that he could not rely upon the allegations in his pleadings to survive summary judgement (Docs. 32, 34). Defendants' Notice likewise warned Plaintiff that he "must show by affidavit or other documentary evidence that there is a genuine dispute as to a material fact" and also informed Plaintiff that he had 30 days to respond to the Motion for Summary Judgment (Doc. 37). Plaintiff never responded, and this Order is entered more than four months after his response was due.

## Factual Background

Defendants' exhibits to their Motion for Summary Judgment reflect the following undisputed facts. Plaintiff submitted an emergency grievance on January 4, 2019, stating that "[due] to the dust [and] the poor water condition I'm having health issues I'm being charged $5.00 by health care [due] to the ventilation system at Shawnee C.C. which is [affecting] my health this issue is documented in the system" (Doc. 36-3, p. 22). Pursuant to Illinois regulations, the warden of a prison decides whether an inmate's grievance is treated as an emergency. 20 ILL. ADMIN. CODE § 504.810(a). On January 9, 2019, Warden Dennison determined Plaintiff's grievance did

---

[1] According to the Certificate of Service on the Motion, Memorandum of Law, and Notice, Defendants' counsel sent the pleadings to Plaintiff's address that he provided to the Court.

Page 2 of 7

not constitute an emergency (Doc. 36-3, p. 22).  Plaintiff then submitted his grievance to a counselor at Shawnee, who gave the following response: "the water is tested several times a day by a licensed water treatment plant operation at [Shawnee] C.C. and is within the guidelines set forth by the IDPH. The ventilation systems are working properly" (*Id*.).  The grievance officer then recommended to Warden Dennison that Plaintiff's grievance be denied "because the water is tested and within the set guidelines" (*Id*., p. 21).  Warden Dennison concurred with this recommendation on February 4, 2019 (*Id*.).

Meanwhile, Plaintiff submitted another grievance on January 16, 2019 that stated:

> I file this grievance on the Eight[h] Amendment violations of cruel and unusual punishment found in living conditions at the Shawnee C.C. Wind[ows] sealed shut this year so I have no way to cool holes in the screen and the window is broke winter months where I have trouble breathing d[ue] to dust [and] mold[]. System full of dirt and never cleaned or ran.  Breathing th[ese] dust and dirt partic[les] in my cell makes me sick. No hot water in the shower after a few guys shower. No [] hot water steam tables in the kitchen.  Cold water used to clean trays where the food is then placed in this bleach water to be consumed by me each meal[.] Paint in the cell peeling. Cell not painted in years. Mice bugs comes in through the cell windows…I want the correct maintenance done[.] New mattresses[.]  Hot water in shower and kitchen.  There is no steam table or heaters in the kitchen.  Food is served and stored at room temperature and left out in the open air until [it] is served.  No whites no hot water to clean trays, cup, sporks.

(Doc. 36-3, p. 11, 12).  Plaintiff's counselor responded to this grievance, stating "[i]t has been the policy of Shawnee c.c. to screw cell windows shut to stop cold air infiltration for over 15 years. It is not the maint. dept. [sic] to clean inside of cells. The vent[ilation] system is working properly" (*Id*., p. 11).  The grievance officer recommended that the grievance be denied "because the ventilation system is working properly" and Warden Dennison concurred with this recommendation on February 4, 2019 (*Id*. p. 10).

Plaintiff submitted another similar grievance on January 17, 2019 to his counselor:

> …I file this grievance on the Eight[h] Amendment violations of cruel and unusual punishment found in the living conditions at

> Shawnee C.C. Windows sealed shut in the winter months where I have trouble breathing due to the cell being so hot. Ice terminate this year so I have no way to cool off. Holes in the screen and the window is broken. Ventila[tion] system full of dirt and never cleaned or ran. Breathing these dust and dirt particles in my cell makes me sick. No hot water in the shower after a few guys shower. No hot water steam table in the kitchen. Cold water used to clean trays, sporks, and cups. Bleach water in the trays when the food is then placed in this bleach water to be consumed by me each meal. Paint in the cell peeling. Cell not painted in years. Mice, bugs come in through the cell house windows…There is no steam table or heaters in the kitchen. Food is served and stored at room temperature and left out in the open air until it is served….no hot water to clean trays, cups, sporks…. I want the correct maintenance done, New mattress, hot water in showers and kitchen.

(Doc. 36-4, pp. 12, 13). Plaintiff received the following response from his counselor:

> Per dietary, dietary pans food directly into 4 inch pan[s] that are taken directly to the serving line and used to make offender trays. Dietary feeds roughly 1600 meals in 2 hours. The 4 inch pans do not have time to cool down and do not return to be kept hot for any period of time that require them to become less than 140 Fahrenheit. Dietary has 140F water being supplied to the dish machine. In the past dinnerware was dipped in a bleach water solution to properly sanitize. Bleach water is a correct measure of 6 particles of bleach per million particles of water is not way a threat to anyone. Request a mattress on a request slip. Other grievance issues already discussed.

(Id.). Plaintiff's grievance records from Shawnee do not reflect that this grievance was ever submitted to the grievance officer and/or reviewed by Warden Dennison. Moreover, Plaintiff's grievance records do not reflect that any of his grievances were ever reviewed by Defendants Grisson or Walker. Plaintiff's grievance records reflect that he did not submit grievances regarding these issues after February 2019 (Docs. 36-2, 36-3, 36-4). He transferred to Pinckneyville Correctional Center in June 2019 (Doc. 36-5, p. 5).

**Summary Judgment Standard**

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

## Discussion

Subjecting a prisoner to inhumane conditions violates "the essence of the Eighth Amendment." *Thomas v. Blackard*, 2 F. 4th 716, 720 (7th Cir. 2021) (*citing Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To prevail on his claim against Defendants, Plaintiff must establish that: 1) he was denied "the minimal civilized measure of life's necessities" (an objective inquiry) that created "an excessive risk to the inmate's health and safety" and 2) Defendants "knew of and disregarded this excessive risk of harm" to Plaintiff (a subjective inquiry). *Id*. (internal citations omitted). The record before the Court is devoid of any evidence that Defendants Grissom and Walker were aware of the statements made by Plaintiff regarding his dietary living conditions. There is no indication that they reviewed his grievances, or any reference to conversations with them, or evidence that Plaintiff otherwise informed them of the dietary conditions and/or conditions in his cell.

As for Defendant Dennison, the record reflects that he reviewed two of Plaintiff's grievances that described the conditions alleged in this suit: poor ventilation, abysmal temperature

control, peeling paint, bleach in the food, and improperly stored food. The Seventh Circuit has explained that "an inmate's correspondence to a prison administrator may…establish a basis for personal liability under §1983 where that correspondence provides sufficient knowledge of a constitutional deprivation." *Perez v. Fenoglio*, 792 F.3d 768, 78-82 (7th Cir. 2015). For example, where an inmate sent a prison superintendent "many letters" that were "systematically ignored" by the superintendent, the inmate's 1983 claim against the superintendent survived summary judgment. *Id*. (*citing Gentry v. Duckworth*, 65 F.3d 555, 557 (7th Cir. 2005)).

In this case, however, the record does not reflect that Warden Dennison systematically ignored Plaintiff's grievances. Specifically, the two grievances reviewed by Warden Dennison contained substantive responses from Plaintiff's counselor, indicating that the counselor made adequate inquiries regarding policies and customs in the dietary and maintenance departments. The grievance officer ultimately found that the counselor's responses addressed Plaintiff's concerns and Warden Dennison agreed. The evidence of Warden Dennison's limited involvement in the grievance process does not, by itself, create a genuine issue of material fact regarding whether Defendant Dennison knew of and disregarded an excessive risk of harm to Plaintiff.

Consequently, summary judgment is appropriate in favor of Defendants. The Court acknowledges that this finding is based on Plaintiff's grievance records, with no evidence presented by Plaintiff. Summary judgment is "the moment in a lawsuit…when a party must show what evidence [he] has that would convince a trier of fact to accept [his] version of events." *Johnson v. Cambridge Industries, Inc*., 325 F.3d 892, 901 (7th Cir. 2003). Plaintiff has failed to do so, despite warnings that his failure to respond to a motion for summary judgment "may be deemed an admission to the merits" of the motion (Docs. 26, 32, 37). Defendants' Motion for Summary Judgment (Doc. 35) is therefore GRANTED. Plaintiff's claims against Defendants are DISMISSED WITH PREJUDICE. The Clerk of Court is directed to enter judgment accordingly

**IT IS SO ORDERED.**

**DATED: July 19, 2022**

_s/ Reona J. Daly_

**Hon. Reona J. Daly**
**United States Magistrate Judge**
